## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| KATELYN SIMMONS <br> 1074 Ledgebrook Drive <br> Tallmadge, Ohio 44278 <br><br> -and- <br><br> CHRISTINE SIMMONS <br> 1074 Ledgebrook Drive <br> Tallmadge, Ohio 44278 <br><br> Plaintiffs, <br><br> v. <br><br> ILENE SHAPIRO, IN HER OFFICIAL CAPACITY AS THE ELECTED SUMMIT COUNTY, OHIO EXECUTIVE <br> 175 South Main Street, 8th Floor <br> Akron, Ohio 44308 <br><br> -and- <br><br> STEVE BARRY, IN HIS OFFICIAL INDIVIDUAL CAPACITY AS THE ELECTED SHERIFF OF SUMMIT COUNTY, OHIO <br> 53 University Avenue <br> Akron, Ohio 44308 <br><br> -and- <br><br> ALYCIA HAWKINS, IN HER INDIVIDUAL AND OFFICIAL CAPACITY AS DEPUTY SHERIFF OF SUMMIT COUNTY, OHIO <br> 53 University Avenue <br> Akron, Ohio 44308 | CASE NO:_____ <br><br> JUDGE:_____ <br><br><br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

1

|  |  |
|---|---|
| -and- | ) |
|  | ) |
| DEBRA WEILAND, IN HER | ) |
| INDIVIDUAL AND OFFICIAL | ) |
| CAPACITY AS DEPUTY SHERIFF OF | ) |
| SUMMIT COUNTY, OHIO | ) |
| 53 University Avenue | ) |
| Akron, Ohio  44308 | ) |
|  | ) |
| -and- | ) |
|  | ) |
| TERESA STARK, IN HER | ) |
| INDIVIDUAL AND OFFICIAL | ) |
| CAPACITY AS DEPUTY SHERIFF OF | ) |
| SUMMIT COUNTY, OHIO | ) |
| 53 University Avenue | ) |
| Akron, Ohio  44308 | ) |
|  | ) |
| -and- | ) |
|  | ) |
| JOHN DOES and JANE DOES 1-3 | ) |
| EMPLOYEES, AGENTS, AND/OR | ) |
| REPRESENTATIVES OF | ) |
| SUMMIT COUNTY, OHIO | ) |
| AND THE SUMMIT COUNTY SHERIFF | ) |
| NAMES NOT PRESENTLY KNOWN | ) |
| 53 University Avenue | ) |
| Akron, Ohio 44308 | ) |
|  | ) |
| Defendants. | ) |

Now come Plaintiffs, Katelyn Simmons and Christine Simmons, by and through undersigned counsel, Alfred E. Schrader, and submit their Complaint against Defendants, alleged on knowledge as to their own actions, and otherwise upon information and belief, as follows:

**I.     Jurisdiction**

2

1. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(3) and (4) for redress under 42 U.S.C. §§ 1983 et seq for deprivation of rights, privileges, and immunities secured by the constitution and laws of the United States. The court also has supplemental jurisdiction over any claims arising under state law here presented under 28 U.S.C. § 1367.
2. Katelyn Simmons has been a resident of the State of Ohio for at least six (6) months immediately preceding the filing of this Complaint.
3. Christine Simmons has been a resident of the State of Ohio for at least six (6) months immediately preceding the filing of this Complaint.
4. Katelyn Simmons and Christine Simmons are hereinafter referred to collectively as "the Plaintiffs."
5. The actions described related to the incident bringing rise to this claim occurred in Summit County in the State of Ohio.
6. Summit County (herein "the County") and the Summit County Executive (hereinafter "Executive's Office") have been domiciled in the State of Ohio for at least six (6) months immediately preceding the filing of this Complaint.
7. Upon knowledge and belief, Alycia Hawkins has been a resident of the State of Ohio for at least six (6) months immediately preceding the filing of this Complaint.
8. Upon knowledge and belief, Debra Weiland has been a resident of the State of Ohio for at least six (6) months immediately preceding the filing of this Complaint.

9. Upon knowledge and belief, Teresa Stark has been a resident of the State of Ohio for at least six (6) months immediately preceding the filing of this Complaint.

10. Defendants Hawkins, Weiland, and Stark are hereinafter referred to collectively as "the Deputies."

11. Upon knowledge and belief, Defendants John Does and Jane Does 1-3, Employees, Agents, and/or Representatives of Summit County and the Summit County Sheriff have been residents of the State of Ohio for at least six (6) months immediately preceding the filing of this Complaint.

## II. Venue

12. Paragraphs 1-11 are incorporated as fully restated herein.

13. The 42 U.S.C. 1983 civil rights action at the heart of this matter occurred in the Summit County Jail, which is located in Summit County. Thus, venue is proper and appropriate in this Court.

## III. Facts

14. Paragraphs 1-13 are incorporated as fully restated herein.

15. On April 19, 2018, Plaintiff Katelyn Simmons was booked into the Summit County Jail as a pretrial detainee.

16. At the time of Plaintiff Katelyn Simmons' booking, she was given the alert label of "SUICIDE, MENTAL," placing the Deputies and other Jail staff on notice of her condition.

17. The Deputies then failed to adhere to proper protocol by neglecting to timely check on the welfare state of an inmate on suicide mental status.

18. The conduct, practices, and/or policies and procedures as applied to Plaintiff Katelyn Simmons amounted to indifference to a serious medical need of Plaintiff Katelyn Simmons.

19. On April 27, 2018, Plaintiff Katelyn Simmons attempted suicide by hanging in her jail cell, using her bedsheets.

20. Deputy Stark was the first to discover Plaintiff Katelyn Simmons in her cell at approximately 18:30.

21. Deputy Stark then called for Deputy Weiland, who, upon her arrival, called out over the jail radio that an inmate was down in pod 5A, cell 24.

22. Deputy Hawkins arrived on the scene and instructed Deputies Weiland and Stark to remove the noose with the intent of concealing the suicide attempt.

23. The Deputies then folded the sheet Katelyn Simmons used as a noose and returned it to the bed, and placed Plaintiff Katelyn Simmons on the floor, effectively concealing that Katelyn Simmons had attempted suicide by hanging.

24. The nursing staff arrived, and observed Plaintiff Katelyn Simmons lying unconscious, face down in the cell, making distressed breathing noises.

25. The Deputies advised the nursing staff that Plaintiff Katelyn Simmons might be "faking" a seizure.

26. The medical staff and the Jail Supervisory Staff repeatedly questioned Deputies regarding whether Plaintiff Katelyn Simmons had attempted suicide.

27. The Deputies repeatedly denied that Plaintiff Katelyn Simmons had attempted suicide despite all Defendant Deputies knowing that Plaintiff Katelyn Simmons had attempted suicide.

28. The Emergency Medical Service arrived at approximately 19:10 and began to treat Plaintiff Katelyn Simmons for a seizure.

29. It was not until after Plaintiff Katelyn Simmons was transferred to the hospital that Deputy Hawkins admitted that there was a noose found in Plaintiff Katelyn Simmons' cell.

30. It was at this time when Deputy Weiland also admitted that she, Deputy Stark and Deputy Hawkins all knew about the noose and that Deputy Stark took the noose down before anyone else entered the cell.

31. Because of the Deputies' conspiring to conceal, and then concealing the fact of the suicide attempt, Plaintiff Katelyn Simmons did not receive proper medical treatment until she arrived in the emergency room where the hospital staff was notified that Plaintiff Katelyn Simmons did make a suicide attempt and was not suffering from a seizure.

32. Upon being discharged from the hospital and returning to the Jail, Plaintiff Katelyn Simmons was not allowed to shower or receive clean underwear.

33. Jail staff informed Plaintiff Katelyn Simmons that she was being punished for creating a disturbance, and that the restrictions served as that punishment.

34. The County of Summit has for at least the last three years reduced the allotted number of Deputies in the budget, resulting in the Jail staff resorting to conspiracy

to conceal evidence, taking action to conceal evidence, and cruel and unusual punishment to avoid termination.

### IV.   COUNT ONE: FOURTEENTH AMENDMENT CIVIL RIGHTS VIOLATION

35. Paragraphs 1-34 are incorporated as fully restated herein.

36. Plaintiff Katelyn Simmons' Fourteenth Amendment substantive and procedural rights were violated by Defendants, and each of theirs, deliberate indifference to Plaintiff Katelyn Simmons' known serious medical needs.

37. Due to Plaintiff Katelyn Simmons' suicide attempt, she had an objectively serious medical condition that a lay person would immediately understand would require medical assistance.

38. The Deputies perceived the fact of Plaintiff Katelyn Simmons' serious medical need and understood the risks to the prisoner, drew such an inference, and disregarded those risks when they undertook to destroy evidence and lie to medical staff regarding the cause of Plaintiff Katelyn Simmons' injuries.

39. The actions and inactions of Defendants, jail officials and employees, and each of them, deprived Plaintiff Katelyn Simmons of her protected interest in life, liberty, and property without due process, when she was denied the proper medical treatment.

40. The actions and inactions of Defendants, jail officials and employees, and each of them, deprived Plaintiff Katelyn Simmons of her protected interest in life, liberty, and property without due process, when Defendants did not correctly follow procedure for known pretrial detainees at risk of suicide.

41. It is alleged that the policies and customs of the Sheriff's Office were unconstitutional, or alternatively, applied in an unconstitutional manner, in that they arbitrarily denied medical treatment to pretrial detainees, and/or that they effectively caused deliberate indifference to the medical needs to pretrial detainees.

42. The policies and customs of the County were unconstitutional, or alternatively, applied in an unconstitutional manner, in that they arbitrarily denied medical treatment to pretrial detainees, and/or that they effectively caused deliberate indifference to the medical needs to pretrial detainees.

43. Each individual occurrence in which Plaintiff Katelyn Simmons was denied appropriate treatment was a separate violation of Plaintiff Katelyn Simmons' Fourteenth Amendment rights, resulting in multiple claims for violations of those rights.

V.  **COUNT TWO: EIGHTH AMENDMENT CRUEL AND USUAL PUNISHMENT**

44. Paragraphs 1-43 are incorporated as fully reinstated herein.

45. Defendants' denial of and failure to provide necessary medical care for Plaintiff Katelyn Simmons amounted to the infliction of cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

46. Defendants, and each of them, neglected to check on Plaintiff Katelyn Simmons in a timely fashion, providing the opportunity for harm to befall her.

47. Defendants, and each of them, then conspired to and did destroy evidence of Plaintiff Katelyn Simmons' attempted suicide and provided false information to

medical personnel resulting in a denial to Plaintiff Katelyn Simmons of necessary medical aid which she required.

48. Upon Plaintiff Katelyn Simmons' return to the Jail, Defendants, and each of them, again prevented Plaintiff Katelyn Simmons from accessing showers and undergarments, and other necessities for maintaining her health.

49. Defendants, and each of them, at all points sought to therefore inflict punishment upon Plaintiff Katelyn Simmons that was outside and beyond the manner of punishment required to be administered to Plaintiff Katelyn Simmons as a pretrial detainee.

## VI. COUNT THREE: FAILURE TO TRAIN

50. Paragraphs 1-49 are incorporated as fully reinstated herein.

51. Plaintiffs allege that Defendant Summit County, failed to train their employees and failed to employ sufficient numbers of jail deputies to timely make welfare checks on suicide/mental inmates so as to have caused deliberate indifference to the medical needs of Plaintiff Katelyn Simmons.

## VII. COUNT FOUR: VIOLATION OF R.C. 2921.13

52. Paragraphs 1-51 are incorporated as fully reinstated herein.

53. Deputies Stark, Weiland, and Hawkins knowingly made false statements.

54. These false statements were made in order to mislead superiors during the investigation following Plaintiff Katelyn Simmons' suicide attempt.

55. Under the Ohio Revised Code 2921.13(G), the section for falsification, any person who violates this code section is liable in a civil action to any person harmed by the violation for any injury incurred.

56. The County failed in its duty and responsibility to fund an adequate number of deputies, resulting in deputies being overworked, and leading them to resort to covering up their failures to avoid discipline or termination.

57. Plaintiff Katelyn Simmons was harmed by the Defendants' violation of the ORC 2921.13.

58. This Court has jurisdiction to hear this state law claim pursuant to 28 U.S.C. § 1367.

## VIII. PUNITIVE DAMAGES

59. Paragraphs 1-58 are incorporated as fully reinstated herein.

60. Plaintiffs allege that the conduct of all Defendants was wanton, reckless, and deliberate in nature so as to warrant punitive damages.

61. Due to the Defendants' wanton, reckless, and deliberate behavior and/or criminal behavior, Plaintiffs seeks punitive damages in an amount that a trier of fact finds appropriate.

62. Plaintiff Christine Simmons was further injured by the failure of the Defendants, and each of them, to allow her to obtain from Katelyn Simmons companionship, comfort, love and solace during the time in which Katelyn Simmons was in the hospital receiving treatment for her suicide attempt.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Honorable Court grant judgment in favor of Plaintiffs, Katelyn Simmons and Christine Simmons, for the requested punitive damages and compensatory damages to be proven at trial in excess of Seven Hundred Fifty Thousand dollars ($750,000.00) including damages for pain and suffering, reasonable legal fees, interest and costs, and/or such other legal and equitable relief as this Court deems just and proper.

Respectfully submitted,
**RODERICK LINTON BELFANCE, LLP**

*/s/ Alfred E. Schrader*
Alfred E. Schrader (0001837)
50 S. Main Street, 10th Floor
Akron, Ohio  44308-1828
Telephone No. (330) 434-3000
Facsimile No. (330) 434-9220
E-mail address:  aschrader@rlbllp.com
*Attorney for Plaintiffs*
*Katelyn Simmons and Christine Simmons*